COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Overton


CRYSTAL WOODWARD

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0023-05-1                              PER CURIAM
                                                         JUNE 14, 2005
CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES


               FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                            Wilford Taylor, Jr., Judge

            (Betsy E. Cornatzer; Law Office of Betsy E. Cornatzer, P.C., on
            brief), for appellant.

            (A. Paul Burton, City Attorney; Lesa J. Yeatts, Deputy City
            Attorney; William G. Broaddus; Tennille J. Checkovich; Dywona L.
            Vantree-Keller, Guardian *ad litem* for the minor child;
            McGuireWoods LLP, on brief), for appellee.


        Crystal Woodward appeals the trial court's decision terminating her parental rights to her

minor child pursuant to Code § 16.1-283(C)(2).  Woodward contends the trial court erred in

finding that clear and convincing evidence proved (1) she did not substantially remedy the

conditions which led to the child's foster care placement; and (2) reasonable and appropriate

efforts of social, medical, mental health or other rehabilitative agencies were made on behalf of

Woodward by the City of Hampton Department of Social Services.  Upon reviewing the record

and the briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that Woodward had an extensive history of substance abuse. Prior to the child's birth, Woodward was offered services through Project Link, but did not cooperate. After admission to the hospital for labor, Woodward tested positive for opiates, cocaine, and marijuana. Shortly after the child's birth on October 15, 2002, the child tested positive for opiates and cocaine. Following the child's birth, Woodward was treated for heroin withdrawal symptoms. The child first came into foster care six days after birth.

The goal of the initial foster care plan was for return of the child to Woodward. Under that plan, Woodward was required to cooperate with the Department toward the goal of reunification, demonstrate her ability to meet the child's needs, demonstrate her ability to ensure the child's safety needs could be met, demonstrate her ability to understand the child's developmental needs, demonstrate her ability to ensure the child received adequate medical and well-baby check-ups, demonstrate her ability to provide a stable, safe living environment, demonstrate her ability to obtain and maintain employment for at least six months, maintain contact with the Department in regards to the child's welfare, cooperate with the Department in an attempt to establish paternity, successfully complete a substance abuse treatment program and follow all recommendations, successfully complete parenting classes, complete and follow all recommendations of a parenting capacity evaluation, complete and follow all recommendations of a psychological/psychiatric evaluation, and notify the Department of any address changes.

On May 13, 2003, another foster care plan, with the same goal of reunification, was reviewed by the juvenile and domestic relations district court. The juvenile court approved the plan with a revision of "concurrent goals of return to parent and placement with relatives." On October 14, 2003, the juvenile court approved an interim plan with a permanent goal of

placement of the child with relatives due to Woodward's refusal to cooperate with services and failure to make any progress towards having the child returned to her care.

Thereafter, the Department determined that the maternal grandparents each had founded abuse or neglect cases involving their own children. The grandparents also had extensive substance abuse histories and criminal histories, including multiple felony convictions, some of which were drug-related. In addition, the maternal grandparents were not willing to assist in locating Woodward, whose whereabouts had become unknown. At that time, return to parent was also not a viable goal because of Woodward's refusal to cooperate with services. Woodward had failed to maintain contact with or notify the Department of any address changes and had failed to make any efforts to rectify the situation that brought the child into foster care.

A new foster care plan was filed with the juvenile court, with the goal of adoption, due to the child's placement with relatives no longer being a viable option. On July 13, 2004, at a second permanency planning hearing, the juvenile court approved the goal of adoption and termination of Woodward's parental rights as in the best interests of the child.

Woodward appealed to the circuit court the order terminating her parental rights. Tanisha Sanders, a foster care worker, testified that she reviewed with Woodward the initial foster care plan and Woodward's responsibilities on December 11, 2002. Sanders testified that Woodward had visited the child only three times since her placement in foster care, on December 11, 2002, January 22, 2003, and for three minutes on February 5, 2003. Woodward was not consistent with visitation or her own treatments and never demonstrated an ability to meet the child's needs. Woodward also never demonstrated an ability to ensure that the child's safety needs were met, to provide a safe, stable living environment for the child, or to obtain and maintain employment for six months. In addition, Woodward never completed any substance abuse treatment.

Sanders testified that Woodward was sent home from a drug and alcohol assessment on February 25, 2003 because she was under the influence. Her appointment was rescheduled, but she failed to show up. Woodward did not start parenting classes or complete a parenting capacity evaluation. In fact, the evaluation could not be scheduled because the Department was not able to locate Woodward after February 2003. Woodward failed to maintain contact with or notify the Department of address changes and, according to Sanders, Woodward "disappeared, for lack of a better term." The Department did not know Woodward's whereabouts between February 2003, when Sanders sent Woodward a letter concerning "a capias that was out for her" until approximately one week before the termination hearing. Sanders acknowledged that Woodward telephoned her on June 30, 2004, said "she had taken care of her warrant," and also said she wanted to see her child. At that time, Sanders advised Woodward that the goal had been changed to adoption and that a termination hearing had been scheduled. In summary, Sanders testified that Woodward did not achieve any of the requirements needed to attain the goal of reunification with her child.

Woodward, who was incarcerated at the time of the termination hearing, testified that her child came into foster care because she was on drugs. Woodward admitted that from February 19, 2003 until June 30, 2003, she had no contact with the Department because she was unstable and on drugs. She also admitted there was an outstanding criminal warrant for her during that time. Woodward admitted that she had not completed any of the goals for returning her child to her care. Woodward thought her parents would get her child until she could get herself "straight." Woodward asked the circuit court for another chance to satisfy the requirements and said she "just didn't realize it was that serious."

In his factual findings, the trial judge noted that "placement of the child with the maternal grandparents would place the child at extreme risk and such a placement would be, at best,

inappropriate." The trial judge found that "Woodward, [who] suffers from extensive substance abuse problems[, . . . ] had been unable to complete any of the goals set in the service plan for this child and her whereabouts have been unknown since her last visit with the child in February 2003." The trial judge also found that "since her birth, [the child] has resided with the same foster parents who are also the potential adoptive parents. She has thrived in that placement." The trial judge granted the petition to terminate Woodward's parental rights and approved the plan for adoption.[1]

"'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.' The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citations omitted). Recognizing that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action,'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (citation omitted), we nevertheless "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

Code § 16.1-283(C)(2) provides in pertinent part that a court may terminate the residual parental rights of a parent of a child in foster care upon clear and convincing evidence that it is in the best interest of the child and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health

---

[1] John Ezzell, identified as the child's father, is incarcerated and voluntarily relinquished his parental rights, without objection from any parties.

or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

In this case, clear and convincing, and essentially undisputed, evidence proved that Woodward, without good cause, failed or has been unable to make any substantial progress towards elimination of the conditions that led to the placement of her child into foster care. In addition, clear and convincing evidence proved the Department offered ample services to Woodward to assist her in reaching the goal of reunification with her child, but she did not take advantage of those services. The child had been in foster care for approximately twenty-six months when the circuit court held the termination hearing. "[I]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

This record supports the trial court's finding that clear and convincing evidence satisfied the statutory requirements of Code § 16.1-283(C)(2) and established that termination of Woodward's parental rights was in the child's best interests. Accordingly, the decision was not plainly wrong or without evidence to support it, and therefore, we summarily affirm its decision. See Rule 5A:27.

Affirmed.